Thomas IANNARELLI

v.

Rogers B. MORTON, Secretary, Department of Interior of the United States

and

Robert E. Hampton, Chairman

and

James E. Johnson, Vice-Chairman

and

L. J. Andolsek, Commissioner, United States Civil Service Commission.

Civ. A. No. 68–2116.

United States District Court, E. D. Pennsylvania.

April 14, 1971.

Thomas Iannarelli, pro se.

Richard P. Brown, Jr., Morgan, Lewis & Bockius, Philadelphia, Pa., amicus curiae.

Louis C. Bechtle, U. S. Atty., Edwin E. Naythons, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

## OPINION

HIGGINBOTHAM, District Judge.

The plaintiff, Thomas Iannarelli, instituted this action to obtain review of his discharge as a civil service employee of the United States Government.[1] As an employee of the National Park Service in the Department of the Interior, the plaintiff at various times made charges of racial and religious discrimination against certain officials of the National Park Service, and also encouraged employees of the National Park Service to file complaints making such charges.

In April of 1967, Mr. Iannarelli was removed from his position with the National Park Service, based in part on the charge that he had "repeatedly used" his position with the National Park Service "to foment disaffection and dissension among * * * fellow employees by falsely stating that officials of the Northeast Region, National Park Service, were prejudiced against minority groups and practiced racial and religious discrimination * * *"[2] The Regional Director and the Board of Appeals and Review of the Civil Service Commission approved the agency's action dismissing Mr. Iannarelli from his position.

The present action raises, *inter alia*, the ultimate issue of whether the Government may discipline a civil service employee for making allegedly false and unfounded charges of racial discrimination on the part of his superiors, without proof that such charges were made either with knowledge of their falsity or with reckless disregard of their truth, or with the specific intent to foment disaffection and discord or otherwise obstruct the efficient functioning of government. The preliminary issue before the Court, however, is the validity of the Civil Service Commission's affirmance of the action taken by the National Park Service in dismissing the plaintiff from government employment. For reasons set forth herein, I have concluded that although the plaintiff is not now entitled to relief, this action should be remanded to the Civil Service Commission for appropriate reconsideration. This remand is neces-

---

1. 5 U.S.C. § 702 provides: A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.

2. Letter of Lemuel A. Garrison, Regional Director, National Park Service to Thomas Iannarelli, March 31, 1967.

sary because it appears that the Civil Service Commission misinterpreted the first charge relied on by the National Park Service as a basis for the plaintiff's dismissal, and that, because of this misinterpretation, the Civil Service Commission failed to determine whether substantial evidence supports the *actual charge* made against the plaintiff.

I. The present action was instituted on September 27, 1968. After the filing of the Government's answer and motion to dismiss, I initially granted the Government's motion to dismiss with prejudice on April 18, 1969. The basis for the Government's motion was that the dismissal of Mr. Iannarelli from the National Park Service "was neither arbitrary nor capricious but on the contrary all required procedures were complied with." Subsequent to my initial dismissal of Mr. Iannarelli's action, the Court of Appeals for the Third Circuit decided Charlton v. United States, 412 F.2d 390, on June 2, 1969 and held that the scope of judicial review of a federal agency's dismissal of a civil service employee extended to the question of "whether the administrative record establishes that substantial evidence supports the agency's action * * *" 412 F.2d at 395. Because I had not considered this action under the more liberal standard of review articulated in *Charlton*, the Court of Appeals remanded this action to this Court "for further proceedings in the light of Charlton v. United States.²ᵃ" On July 29, 1970 Richard P. Brown, Jr. accepted appointment by this Court to file a brief generally on behalf of the plaintiff, even though Mr. Iannarelli had expressed his desire to represent himself. On August 7, 1970 the District Court ordered counsel for each party to brief two additional issues raised by Mr. Iannarelli's brief of July 26, 1970. These additional issues

were: (1) may the Government use as a basis for removal from one's civil service position the allegation that the employee repeatedly used his position to foment disaffection and dissension among his fellow employees by "falsely" stating that officials are prejudiced against minority groups and practice racial and religious discrimination? and; (2) under the facts of this case, to what extent may the Government use as a ground for dismissal the fact or allegation that "false and defamatory statements" have been made against his superiors?

The background facts necessary for the proper determination of the present action may be summarized as follows: On March 31, 1967 the plaintiff received notice from the Regional Director of the National Park Service, Lemuel A. Garrison, of his proposed removal as an employee of the National Park Service. The proposed action of removal was stated to be "in order to promote the efficiency of the service" in accordance with 5 U.S.C. § 7501(a).³ The "grounds, charges and reasons" for this proposed removal were certain alleged actions of the plaintiff during the period from November 1965 to, and including, August 1966, which actions "taken individually and together" were alleged to have "adversely affected and impaired the efficiency of the Service * * *." Three principal categories of allegedly improper and detrimental conduct by the plaintiff were listed. First, it was charged that the plaintiff had "repeatedly used" his position [4] as an employee of the division of Personnel Management and Manpower Development of the National Park Service "to foment disaffection and dissension among * * * fellow employees by falsely stating that officials of the Northeast Region, National Park Service, were prejudiced against minority

---

2a. Order of January 27, 1970 (unreported).

3. 5 U.S.C. § 7501(a) provides: "An individual in the competitive service may be removed or suspended without pay only for such cause as will promote the efficiency of the service." ,

4. The plaintiff was employed as a personnel classification specialist in the Personnel Division of the National Park Service.

groups and practiced racial and religious discrimination." Second, it was charged that the plaintiff, as a personnel classification specialist having access to the official files of the Personnel Division, "falsely represented" to employees of the Park Service that documents in the files bear notations evidencing discrimination against them. Third, it was charged that the plaintiff had made "false and defamatory" statements about officials of the Northeast Region, National Park Service. To properly evaluate the validity of the plaintiff's removal, based on these three general charges against him, the specific actions of the plaintiff on which the Regional Director of the National Park Service relied to support each charge against the plaintiff should first be examined in detail.

The first principal charge was that the plaintiff "repeatedly used" his position as an employee in the Personnel Division of the National Park Service "to foment disaffection and dissension among * * * fellow employees" by "falsely stating" that officials of the National Park Service, "were prejudiced against minority groups and practiced racial and religious discrimination." Three incidents were relied on in support of this charge. The first incident as set forth in the March 31, 1967 letter of proposed removal, was that on or about November 19, 1965 the plaintiff urged Samuel C. Moore, an employee of the Northeast Regional Office of the Park Service to file a complaint prepared by the plaintiff "falsely accusing his supervisors and fellow employees of discrimination on the basis of race." The charge further specified that in support of this complaint, the plaintiff "wrongfully and surreptitiously obtained and copied documents from the official

files of the Personnel Division and sent them to Mr. Moore." In his affidavit submitted to the Civil Service Commission to justify Mr. Iannarelli's discharge, Lemuel A. Garrison, the Regional Director of the Park Service, asserted that Mr. Iannarelli urged Mr. Moore to submit the complaint charging racial discrimination not only to the United States Civil Service Commission but also to "Hon. Adam Clayton Powell and the National Association for the Advancement of Colored People." [5]

Under the first charge of intentionally fomenting "disaffection and dissension" among employees of the National Park Service, the second instance relied on was that on April 1, 1966 at approximately 9:15 p. m. Mr. Iannarelli placed a long distance telephone call to Maurice E. Kowal, an employee of the National Park Service at Concord, Mass., and informed him that the files of the Northeast Region of the Park Service reflected that the agency was prejudiced against President Kennedy and that because Mr. Kowal had been appointed pursuant to executive order of President Kennedy, the Park Service was consequently prejudiced against Mr. Kowal and that Mr. Kowal, therefore, should not hope for promotions because of this alleged prejudice.[6] In reply to this charge Mr. Iannarelli admitted at a hearing conducted by the Civil Service Commission that he had telephoned Mr. Kowal on the date and at approximately at the time alleged. His explanation for the long distance telephone call, however, was that he wanted to notify Mr. Kowal that he was about to receive through the mail a "paint by number" set featuring a portrait of President Kennedy.[7] Mr. Iannarelli further stated that any other matters allegedly

5. Affidavit of Lemuel A. Garrison, p. 3., May 17, 1967.

6. The record indicates that Maurice Kowal was a member of the crew of PT–109, which President Kennedy commanded as a Naval Lieutenant in World War II. Civil Service Appeal Hearing Transcript, June 15, 1967, p. 16 (hereinafter Appeal Hearing Transcript).

7. At the time of his dismissal Mr. Iannarelli operated a plant which manufactured "paint by the number" sets of President Kennedy. According to the plaintiff's testimony, the call to Mr. Kowal on April 1, 1966 was made from the plant where the paint by the number sets were manufactured. At the appeals hearing before the Civil Service Commis-

discussed in the long distance telephone call were raised by Mr. Kowal and not by Mr. Iannarelli.

The third specification under Charge I was that on or about August 15, 1966, "during official duty hours and in the offices of the Personnel Division" the plaintiff advised a new employee, Mrs. Betty Zeidman, "that her supervisors discriminated against Jews and that because she was Jewish, she should not expect promotion."

The second charge against Mr. Iannarelli was that he "falsely represented" to two employees of the Northeast Region "that documents in the files [of the National Park Service] bear notations evidencing discrimination against them." The first specification under this charge was that Mr. Iannarelli "falsely represented" that a notation on a letter in the personnel files of Samuel C. Moore, an employee of the Park Service, "reflected discrimination against him because of his race." [8]

The second specification under this charge was a restatement of the allegation that Mr. Iannarelli had telephoned Mr. Maurice E. Kowal to inform him that the files of the Personnel Division of the Northeast Region of the National Park Service indicated that the Park Service was prejudiced against President Kennedy, and that Mr. Kowal, appointed by executive order of President Kennedy, therefore would not be considered fairly for promotion or within-grade increases in salary.

The third principal charge against Mr. Iannarelli was that he had made "false and defamatory statements" about officials of the Northeast Region of the National Park Service. The specific charg-

es under this heading were that Mr. Iannarelli in June, 1966 had "falsely stated" to a reporter for the New York Times and to an agent of the Federal Bureau of Investigation, that Mr. "X", [9] a Regional Management official of the Park Service, had "threatened" his life. It was further charged that Mr. Iannarelli had "falsely stated" to officials of the Park Service and to officials of the Department of the Interior and to an agent of the F.B.I. that a "management official" of the Northeast Region of the National Park Service had "threatened his life". The final specification under this heading was that the plaintiff had "falsely stated" to Maurice E. Kowal (an employee of the National Park Service also referred to under Charges I and II,) that Edwin Small, then Project Coordinator of the Boston Group of the National Park Service, had recommended Mr. Kowal for promotion "but had privately advised his superiors to disregard such recommendation." This specification also repeated the allegation that the plaintiff had advised Mr. Kowal that because officials of the National Park Service were prejudiced against President Kennedy, Mr. Kowal should not expect a promotion.

II. After receiving the Regional Director's letter of March 31, 1967, informing the plaintiff of his proposed removal "to promote the efficiency of the service", Mr. Iannarelli wrote to the Regional Director on April 6, 1967, challenging the findings and conclusions stated in the letter of March 31, 1967. By letter dated April 13, 1967, the Regional Director informed Mr. Iannarelli that he had given "full consideration to your letter of April 6, 1967" but had found that the three charges in his letter of March 31, 1967

---

sion Mr. Kowal admitted that Mr. Iannarelli had told him during their telephone conversation, that he would soon become the recipient of a paint by the number set of President Kennedy. (Appeal Hearing Transcript, p. 10).

8. The notation which Mr. Iannarelli reported to Mr. Moore read as follows: Bill: I have a copy. Presume you will simply tell Sam his qualifications

and eligibility, etc. will be considered if the position is filled. (Frances had previously advised Sam he could not qualify for the 7. Would this be the proper time and place to inform him so in writing. J. B.)

9. The actual name of the management official is not relevant here and should be withheld to avoid any unnecessary embarrassment.

were "fully supported by the evidence and warrant your removal to promote the efficiency of the service." The Regional Director therefore informed Mr. Iannarelli that he would be removed from the Service as of May 9, 1967. The April 13th letter of the Regional Director also informed the plaintiff of his right to appeal this decision to the Director of the National Park Service or to the United States Civil Service Commission and outlined in detail the procedures necessary to effect an appeal.

Mr. Iannarelli subsequently filed an appeal to the Regional Director of the Civil Service Commission. In connection with this appeal, a hearing was held in the Regional Office of the Civil Service Commission in Philadelphia on June 15, 1967. The witnesses who appeared at the hearing, at the request of the plaintiff, included Maurice E. Kowal, Mrs. Betty Zeidman, Samuel E. Moore, Lemuel A. Garrison and Charles E. Arnold. On July 19, 1967, the Acting Regional Director of the Civil Service Commission filed a written opinion affirming the decision of removal. On July 21, 1967, the plaintiff appealed to the Board of Appeals and Review of the Civil Service Commission, which affirmed the decision of the Regional Director on September 29, 1967. On October 29, 1967 the plaintiff requested reconsideration of the decision of the Board of Appeals and Review. He was informed by letter of November 3, 1967 that the Board would not reopen the case. Subsequently, on September 27, 1968, the plaintiff filed this action in the United States District Court.

III. Preliminarily, after a complete review of the record, including the hearing before the Civil Service Commission, two conclusions seem clear. First, as to Counts II and III, it appears that the plaintiff's dismissal was not "arbitrary or capricious." The record before the Court, particularly the affidavit of Lemuel A. Garrison, the Regional Director of the National Park Service at the time of Mr. Iannarelli's removal, indicates a deliberate evaluation of the plaintiff's performance and a carefully considered decision to remove the plaintiff. In regard to Charges II and III the present record does not support a finding that the agency's action or the Civil Service Commission's approval thereof was "arbitrary or capricious."

Second, it further appears that the plaintiff was fully informed of his administrative rights at all stages of the proceedings regarding his removal, both before the National Park Service and the Civil Service Commission. The Regional Director of the Civil Service Commission found, in reviewing the decision to remove the plaintiff, that "appellant was given the required advance notice of at least thirty (30) full calendar days" and that "Mr. Iannarelli was afforded a reasonable length of time * * * to reply to the notice" of proposed removal; that he was retained in active duty status during the notice period; that the notice of decision, which indicates that consideration was given to the appellant's written reply to the charges, states acceptably the reasons relied upon by the agency for its decision; and that the decision informed Mr. Iannarelli of his right of appeal to the Civil Service Commission as well as to the Department of Interior.[10]

Charlton v. United States, *supra*, recognized that the scope of judicial review of an adverse agency action with respect to the dismissal or discipline of a Civil Service employee also extended to the question "whether the administrative record establishes that substantial evidence supports the agency's action." 412 F.2d at 395.

In light of the scope of judicial review recognized in Charlton v. United States, *supra*, the decisive questions before the Court are (1) whether a valid standard was employed in defining the plaintiff's alleged misconduct; and (2) whether substantial evidence supports the material elements of the charges on which the plaintiff's dismissal was based.

10. Opinion of July 19, 1967, pp. 1–2.

■ The essential problem presented by this case is to define a balance between freedom of expression and the legitimate demands of discipline and loyalty in federal employment. Obviously, a place of employment is not the constitutional equivalent of a street corner rally; for at a public street corner rally, absent fighting words or physical abuse, Chaplinsky v. New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) cf. Terminiello v. Chicago, 337 U.S. 1, 69 S. Ct. 894, 93 L.Ed. 1131 (1949), a speaker has almost unlimited right to express his wildest speculations, hunches or prejudices. But even if federal employment does not permit the exercise of the full panoply of First Amendment rights regarding freedom of speech and assembly, federal employment does not preclude the expression of all opinions, speculation or criticism. Particularly where Presidential Commissions, Congressional Committees, and authoritative fact finders [11] have consistently found long standing racial prejudice in private and public employment in our nation, it is most important that federal fair employment policies [12] not be impaired by sanctioning a dismissal from employment because of an employee's sincere, though misguided and inaccurate expression of criticism for alleged racial and religious prejudice in government employment.

■ A proper balance between freedom of expression and discipline in government service should not unreasonably restrain expressions of opinion and should permit and encourage full inquiry into allegations of racial and religious discrimination. Yet, at the same time, this balance should protect these rights without an unwarranted restriction of the right of government to discipline those employees whose conduct unjustifiably causes demonstrably adverse impact on the efficient operation of government.

IV. The necessity and the difficulty of defining such a balance must be fully recognized in attempting to evaluate the validity of the plaintiff's removal. For this Court to determine whether substantial evidence supports the challenged agency action, it is most important to carefully define the material elements of the charges brought against Mr. Iannarelli—material elements which the agency alleged, and therefore accepted the responsibility to establish by substantial evidence.

Charge I alleges that the plaintiff "repeatedly used" his position "to foment disaffection and dissension" among fellow employees "by falsely stating" that officials of the National Park Service "were prejudiced against minority groups and practiced racial and religious discrimination * * *." Because the phrase *"used his position"* was employed in Charge I, this charge should be construed to allege that the plaintiff had the intent to foment disaffection and dissension. The affidavit submitted by the Regional Director of the National Park Service and the argument of the Regional Solicitor of the Interior Department at the hearing before the Civil Service Commission confirm that the officials who framed and prosecuted the complaint against Mr. Iannarelli viewed *intent* as a necessary element of the first charge against him. The Regional Director stated: "I'm convinced that the fear, discontent, distrust, and dissatisfaction *sought to be engendered* by the course of conduct so energetically pursued by Mr. Iannarelli did, in fact,

11. White House Conference, "To Fulfill These Rights"—Council's Report and Recommendations to the Conference (1966); House Committee on Education and Labor, H.R.Rep.No.718, 89th Cong., 1st Sess. (1965); see generally for further references, Emerson, Haber & Dorsen–Political and Civil Rights in the United States, Vol. 2, pp. 1468–69.

12. See: Title VII of the Civil Rights Act of 1964—Equal Employment Opportunity. 78 Stat. 241, 253, 42 U.S.C. § 2000e 1 et seq.; Executive Order 11246, 30 Fed.Reg. 12319 (1965). Employment Discrimination and Title VII of The Civil Rights Act of 1964, 84 Harvard Law Review 1109.

spread throughout the Personnel Division of this agency and even beyond, with resultant adverse effect upon and impairment of morale and efficiency." [13] Later in his affidavit he also stated: "Admittedly, I was reluctant to reach the conclusion that Mr. Iannarelli's *purpose* was, in truth and in fact, adversely to affect and impair the efficiency of the service." [14]

At the hearing on Mr. Iannarelli's appeal to the Civil Service Commission, William W. Redmond, Regional Solicitor of the Department of the Interior, stated in his opening remarks: "We are convinced that Mr. Iannarelli's motives in this hearing, and in this entire proceeding, throughout this proceeding, and throughout his career with the Park Service, that the acts he has committed were not committed with *any motive other than to harass* the Park Service and his supervisors and to impede the functioning of the Northeast Regional office of the Park Service." [15] In his closing statement at the appeal hearing, Mr. Redmond stated: "All of these incidents we submit establish beyond any doubt that Mr. Iannarelli's *purpose* was to harass his supervisors, to impede the operation of the Park Service, and to foment distrust and dissatisfaction and dissension among his fellow employees." [16]

After a review of the entire record, including the transcript of Mr. Iannarelli's appeal and "reprisal" [17] hearings, it appears at least doubtful that the present record contains substantial evidence that the plaintiff intended to cause "disaffection and dissension" among fellow employees by "falsely charging" that officials of the National Park Service "were prejudiced against minority groups and practiced racial and religious discrimination."

First, evidence presented in regard to specification I(b) under Charge I cannot properly be relied on to support Charge I and, therefore, cannot be relied on to support the more general allegation of the preamble to the complaint. The Regional Director of the Civil Service Commission found that Specification I(b)—charging that Mr. Iannarelli had made false accusations concerning the prejudice of the Park Service against President Kennedy—was supported by the evidence, but concluded, however, that "prejudice against President Kennedy" is not synonymous with "prejudice against minority groups" or with racial and religious discrimination. [18] In spite of this finding, the Regional Director went on to conclude that Specification I(b) did support "the reasoning" stated in the preamble of the charges—that the appellant engaged in actions which, "taken individually and together, had adversely affected and impaired the efficiency of the service," and also supported "that part" of Charge I regarding "fomenting disaffection and dissension." [19] However, in face of the initial finding of the Civil Service Commission, a finding with which I concur, that prejudice against President Kennedy was not equivalent to prejudice against minority groups or to racial and religious discrimination, the ultimate

---

13. Emphasis added.

14. Emphasis added.

15. Appeal Hearing Transcript, p. 4, emphasis added.

16. Ibid., p. 80, emphasis added.

17. Mr. Iannarelli charged that various administrative actions taken against him before his proposed removal, as well as the removal itself, were effected as a reprisal for his filing formal discrimination complaints. A hearing was conducted by the Department of the Interior on this matter and plaintiff's charges of reprisal were found to be unsubstantiated. An appeal to the Civil Service Commission from this determination by the Department of the Interior was considered in conjunction with Mr. Iannarelli's appeal from the decision to remove him as an employee of the National Park Service.

18. Opinion of the Acting Regional Director of the Civil Service Commission, July 19, 1967, p. 5.

19. Opinion of July 19, 1967, p. 5.

finding of the Commission sustaining reliance on Specification I(b) was improper.

■ Under the reasoning of the Regional Director, presumably any action which "adversely affected and impaired the efficiency of the service" could be relied on to sustain the removal of the plaintiff—*even though such conduct was not specifically charged in the complaint.* The underlying charge stated in the preamble—of adversely affecting and impairing the efficiency of the service—can only be established by evidence supporting the specific charges made. It was improper for the Commission to go outside the specific charges to find that Specification I(b) supported "the reasoning" of the preamble, without reference to whether Specification I(b) supported the particular charge in the letter of proposed removal. Further, the Commission improperly bifurcated Charge I, when it found that "to the extent that the appellant 'fomented disaffection and dissension among his fellow employees'" Specification I(b) supported Charge I.[20] First, it is clear that the plaintiff was charged with *intending* to foment disaffection and dissension "*by* falsely stating" that officials of the Park Service practiced racial and religious discrimination. There may be other ways in which the plaintiff could be charged with intending to foment disaffection and dissension. The crucial point, however, is that the first charge alleged one specific means by which he intended to foment such disaffection and dissension—"by falsely stating" that officials of the National Park Service "practiced racial and religious discrimination." The approach of the Regional Director in effect was to rewrite Charge I to permit proof of any conduct which "fomented disaffection and dissension" and "adversely affected and impaired the efficiency of the service."

■ Safeguarding the rights of Federal Civil Service employees certainly requires insistence on the clear delineation of the charges against the employee and strict proof of the particular charges made. As the Court of Claims concluded in Burkett v. United States, 402 F.2d 1002, 185 Ct.Cl. 631 (1968):

> "This case must, of course, be judged on the charge brought against plaintiff and the proof of *that particular charge.* This court can have no concern whether some other complaint could have been levied and supported." 402 F.2d at 1008. (Emphasis added.)

I therefore conclude that reliance on any evidence adduced in reference to Specification I(b) in order to support Charge I, or the ultimate charge of "adversely affecting and impairing the efficiency of the service" was improper and therefore, that any evidence of record pertaining to Specification I(b) cannot be considered in regard to the question of whether substantial evidence supports the ultimate affirmance of the plaintiff's removal by the National Park Service.

■ Turning to the evidence adduced in support of Specifications (a) and (c) under Charge I, the record indicates little evidentiary support for the charge that Mr. Iannarelli intended to foment disaffection and dissension by making false charges of racial and religious prejudice on the part of the officials of the National Park Service.

It should be noted, however, that there is some evidence of record which would appear relevant to establishing the improper purpose which Charge I alleged. Even this evidence is ambiguous, however, and certainly in itself not conclusive.

In his affidavit submitted in justification of the removal of Mr. Iannarelli, Lemuel Garrison, Regional Director of the Park Service, stated that Mr. Iannarelli had informed a fellow employee, Lawrence J. Zollar, that he (Iannarelli) "harassed the management of this agency 'in order to keep management on its toes', and because this course of conduct

20. Ibid., p. 877.

was 'fun'." (Garrison affidavit, p. 10—p. 46 of Appendix.)

The statement quoted by the Regional Director does not indicate the specific harassment that Mr. Iannarelli allegedly pursued "to keep management on its toes." Further, it does not necessarily follow that even an improper purpose to harass management "to keep it on its toes" is equivalent to a purpose to "foment disaffection and dissension" among fellow employees. In Burkett v. United States, 402 F.2d 1002, the plaintiff was removed from his civil service position for allegedly "making malicious statements against his immediate superior * * * with the intent to harm or destroy the latter's reputation, authority, or official standing." (at 1003). The plaintiff admitted that he had made the allegedly malicious statements in order "to embarrass his superior." (at 1004). In overturning the action of dismissal, the Court of Claims stated: "We cannot agree that on this record a purpose to embarrass, in and of itself, was sufficient proof of the element of 'intent to harm or destroy [the superior's] reputation, authority or official standing.'" The Court continued: "For an offense so intimately related to the constitutional protections of free speech and the right to petition * * * both the malice and the intent-to-harm should be of relatively high order." (at 1007–1008). Burkett, while admittedly involving different factual circumstances, is still relevant here. First, Burkett indicates the importance of strict proof of the specific charges made. The Court carefully distinguished an intent "to harm or destroy [a superior's] reputation" from an intent "to embarrass a superior". In the same way this Court cannot equate even an admitted intent "to keep management on its toes" by some unspecified form of harassment—with a specific intent to "cause disaffection and dissension among fellow employess".

It would be difficult for this Court to conclude with confidence that the present record provides substantial evidence that the plaintiff *intended* to use his position to foment disaffection and dissension among his fellow employees by making false charges of racial discrimination on the part of his superiors. The Court, however, finds it unnecessary and inappropriate to make a final resolution of this question, because there is a more immediate defect in the present record. After a careful review of the proceedings before the Civil Service Commission, it appears that the Regional Director of the Civil Service Commission, and the Board of Appeals and Review in approving his decision, did not sustain the first charge against the plaintiff on the basis on which this charge was framed by the National Park Service. Specifically, it appears that the Commission did not construe the first charge to require proof of an *intent* to foment disaffection and dissension, and therefore, failed to find that substantial evidence established this central element of the first charge against the plaintiff. In its review of the evidence relating to Mr. Iannarelli's removal and the grounds therefor, the Civil Service Commission considered essentially only the question of truth or falsity of the charges of racial and religious discrimination initiated by Mr. Iannarelli and the effect of such charges on fellow employees. The Commission, however, did not specifically consider whether it was the intent of Mr. Iannarelli, by making these charges, to foment disaffection and dissension.

The Regional Director's careful opinion confines itself essentially to resolving conflicts in factual allegations between the testimony of various witnesses and of Mr. Iannarelli. The Regional Director also considered whether the charges of racial or religious discrimination initiated by Mr. Iannarelli were true. For example, the Commission stated "we do not find that John Bachensky's longhand note to Mr. Moore on Mr. Moore's November 16, 1965, application * * * establishes or indicates racial discrimination against Mr. Moore by the agen-

cy." [21] Assuming without deciding that this evaluation by the Commission is correct, the crucial defect in the Commission's analysis is the absence of any finding that the charge specified against the plaintiff by the National Park Service, i. e., that the plaintiff *intended* to foment disaffection and dissension by making allegedly false charges of racial and religious discrimination—was supported by substantial evidence.

The Regional Director's evaluation under Specification I(b) causes particular doubt about the correctness of the Commission's interpretation of Charge I. As noted above, the Regional Director found that Specification I(b) was supported "by the evidence of record" but also found that this specification did not support "that portion of Charge I which reads: ' * * * by falsely stating that officials of the Northeast Region, National Park Service, were prejudiced against minority groups and practiced racial and religious discrimination.' " The Commission, however, went on to conclude that specification I(b) "does support the reasoning stated in the preamble of the charges * * * and *that part* of Charge I regarding fomenting disaffection and dissension." [22]

This Court has already ruled that the evidence adduced in support of Specification I(b) cannot properly be considered to support Charge I (and the preamble to the complaint). The reasoning of the Commission here is significant, however, because it indicates that the Commission did not interpret Charge I as requiring proof of an *intent* to foment disaffection and dissension by making false charges of racial and religious discrimination. Rather, the Regional Director's comments on the evidence relating as Speci-

fication I(b) indicate that Charge I was interpreted to require proof of two elements: (1) making false statements concerning racial and religious discrimination and (2) causation of disaffection and dissension among co-workers of the plaintiff.[23] The Regional Director then remarkably concluded that Charge I and the underlying Charge in the preamble could be proved in part by proof that certain acts resulted in fomenting disaffection and consequently causing an adverse impact on the efficiency of the Service, even though accomplished by means not specifically identified as material elements of Charge I. The assumption of the Regional Director that Charge I could be proved *in part* by evidence of fomenting disaffection and dissension quite clearly indicates that the Regional Director did not construe the charge to require proof by appropriate means that the plaintiff *intended* to foment disaffection and dissension by making false charges of racial and religious discrimination.

Since it is clear that the plaintiff was charged with intending to foment disaffection and dissension by making false charges of racial and religious discrimination on the part of his superiors, I cannot now approve the affirmance of plaintiff's removal by the Civil Service Commission on a basis which was not relied on by the National Park Service in terminating the plaintiff's employment.

█ It was the responsibility of the Civil Service Commission to determine whether the *particular charges* made against the plaintiff were supported by substantial evidence and in accordance with federal law and constitutional guarantees. Since the Civil Service

---

21. Opinion of July 19, 1967, p. 3.

22. Opinion of July 19, 1967, p. 5. (Emphasis added.)

23. In the summary of his conclusions regarding Charge I, the Regional Director stated: "The record bears out that the appellant's statements regarding the agency's prejudice against minority groups and

its practice of racial and religious discrimination are false (unfounded). The testimonies of the several employees mentioned in the specifications, particularly those of Maurice E. Kowal and Mrs. Betty Zeidman, reveal that they were greatly disturbed by the appellant's statements and actions." (Opinion of July 19, 1967, p. 7.)

Commission misinterpreted the first charge against the plaintiff, this Court cannot substitute its judgment for the Commission's or speculate on the conclusion which the Commission would have reached in evaluating the evidence if it had properly construed Charge I. The plaintiff was entitled to review of his discharge by the Civil Service Commission.[24] Fundamental fairness requires that the plaintiff's discharge should be evaluated by the Civil Service Commission on the basis of the particular charge brought against him by his agency employer.

 My refusal to accept the conclusion of the Civil Service Commission concerning Charge I is founded not only on a concern for fairness to the plaintiff and respect for the primary responsibility of the Civil Service Commission to evaluate particular charges against government employees. I am also especially concerned with the important issues of free speech and non-discrimination in government empoyment raised by the use of Charge I (as construed by the Civil Service Commission) as a basis for plaintiff's discharge. The improper construction of Charge I by the Civil Service Commission contributed to the failure of the Commission to utilize its expertise and judgment in evaluating the problem of balancing the value of maximum freedom of expression of public employees with the need for adequate discipline in government. Whatever may be the final statutory and constitutional guidelines which courts will follow in defining this balance, this task of definition should occur after receiving the fullest possible enlightenment from the practical experience and mature judgment of the Civil Service Commission. This Court is empowered to review appropriate determinations of the employing agency and the Civil Service Commission, but it cannot substitute its judgment for administrative expertise and discretion. This basic recognition of the Chenery Corporation [25] case indicates that this Court cannot, consistent with its limited role, substitute its policy judgment for the Civil Service Commission's on the important factual and policy issues raised by Charge I.

Since Mr. Iannarelli was ordered removed from his position there has been a considerable increase in judicial concern for the right of public employees to complain to and criticize their superiors in government. By a certain historical irony, one of the most important decisions in this field, Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. 1 (1967), was handed down on May 12, 1967, three days after the effective date of Mr. Iannarelli's removal from the National Park Service. Because of the gradual extension of some First Amendment rights to public employees and because of the substantial governmental interest in assuring non-discrimination in public employment, I am unwilling to affirm agency action on a basis which, if accepted and applied in the future, would harshly restrict the rights of government employees to substantial freedom of expression and to full inquiry into any possible instances of discrimination in employment with the government. To affirm the dismissal of the plaintiff on the basis of the first charge *as it was construed by the Civil Service Commission* would chill the exercise of First Amendment rights by federal employees and restrict the effectuation of non-discriminatory employment policies in government through discouraging the filing of employee complaints. My concern for avoiding any such result can best be understood in the context of a review of recent significant decisions defining the rights of public employees to criticize their superiors and the policies of government. Particularly relevant to the questions presented by

24. Section 752.202, Civil Service Regulations.

25. S. E. C. v. Chenery Corporation, 318 U.S. 80, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Cf. Aktiebolaget Svenska Amerika Linien v. Federal Maritime Commission, 122 U.S.App.D.C. 59, 351 F.2d 756 (1965); Bond v. Vance, 117 U.S.App. D.C. 203, 327 F.2d 901 (1964).

this case are Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Ruderer v. United States, 412 F.2d 1285, 188 Ct.Cl. 456 (1969); Meehan v. Macy, 129 U.S.App. D.C. 217, 392 F.2d 822 (1968); and Swaaley v. United States, 376 F.2d 857, 180 Ct.Cl. (1967).

In Pickering v. Board of Education, *supra*, a public school teacher in Illinois was dismissed by the Board of Education for sending a letter to a local newspaper critical of the Board's "allocation of school funds between educational and athletic programs, and of both the Board's and the superintendent's method of informing, or preventing the informing of, the district's taxpapers of the real reasons why additional tax revenues were being sought for the schools." 88 S.Ct. at 1735. Although the court declined to lay down a standard[26] for the evaluation of the rights and responsibilities of all public employees who criticize their supervisors, the Court held that under the facts of Pickering "absent proof of false statements knowingly or recklessly made * * * a teacher's exercise of his right to speak on issues of public importance may not furnish the basis for his dismissal from public employment." 88 S.Ct. at 1738.

In his separate opinion, concurring in part and dissenting in part, Mr. Justice White noted that "[t]he core of today's decision is the holding that Pickering's discharge must be tested by the standard of New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, [11 L.Ed.2d 686]" (1964) which held that a public official could receive damages for defamatory statements by a newspaper only if the statements were made "either with knowledge of their falsity or with reckless disregard for their truth or falsity." 88 S.Ct. at 1737.

In Swaaley v. United States, 376 F.2d 857, *supra*, the plaintiff, a mechanic at the former Naval Shipyard in Brooklyn, New York, had written a letter to the Secretary of the Navy, charging that promotions at the shipyard were made on the basis of bribes and naming three of the personnel at the shipyard allegedly involved in this practice. On the basis of this letter to the Secretary, the plaintiff was subsequently charged with making "unfounded statements" that "undermined the character, reputation, and efficiency of high level military and civilian officials, and had an adverse effect on the trust and confidence placed in the Shipyard." 376 F.2d at 859.

The plaintiff was discharged and appealed to the Director of the New York Region of the Civil Service Commission. In affirming his dismissal, the Regional Office of the Civil Service Commission stated the standard of the burden of proof which a public employee must meet in regard to charges of misconduct on the part of his superiors: "The rule is that an employee who honestly believes he has information of misconduct on the part of his superiors may divulge it to higher officials without liability even if it turns out that his information is incorrect so long as he acts in good faith and has reasonable grounds for his belief." 376 F.2d at 860. The Regional Director, however, found that plaintiff's proofs did not satisfy this standard in regard to the specifications with which he was charged, and sustained all but one of six specifications against the plaintiff. The Court of Claims reversed the affirmance of the plaintiff's dismissal by the Civil Service Commission, holding that "a petition by a federal employee to one above him in the executive hierarchy is covered by the First Amendment and if it includes defama-

---

**26.** The Court stated that "[b]ecause of the enormous variety of fact situations in which critical statements by teachers and other public employees may be thought by their superiors, against whom the statements are directed, to furnish grounds for dismissal, we do not deem it either appropriate or feasible to attempt to lay down a general standard against which all such statements may be judged." 88 S.Ct. at 1735. The Court further noted that "no question of maintaining either discipline by immediate superiors or harmony among coworkers is presented here." 88 S.Ct. at 1735.

tion of any Federal official, protection is lost only under the circumstances in which a newspaper article would lose such protection if it defamed such official". 376 F.2d at 863.

Another case involving a complaint to a superior officer is Burkett v. United States, 402 F.2d 1002. Paul Burkett, an employee of the Department of Defense, was removed "for making malicious statements against his immediate superior * * * with the intent to harm or destroy the latter's reputation, authority, or official standing." 402 F.2d 1002. The two incidents relied on by the Civil Service Commission in upholding plaintiff's removal involved "the plaintiff's reporting to a management official alleged security violations" by [Mr. Milne], his immediate supervisor. The Court of Claims, however, found that the Commission's finding of "a purpose to embarrass the immediate superior of the plaintiff" was insufficient proof of the element of "intent to harm or destroy [the superior's] reputation, authority or official standing." 402 F.2d at 1007. The Court commented: "For an offense so intimately related to the constitutional protections of free speech and the right to petition [citing, inter alia, Pickering v. Board of Education, and Swaaley v. United States, supra.], both the malice and the intent-to-harm should be of relatively high order." 402 F.2d at 1007–1008. The Court noted that in Swaaley v. United States "we pointed out the importance of keeping open the channels through which employees can call alleged derelictions or injustices to the attention of their superiors." 402 F.2d at 1008.

Another relevant decision is Ruderer v. United States, supra. The plaintiff was removed from his position with the United States Army Aviation Materiel Command for "knowingly [having] made irresponsible, false, and malicious statements" against other employees, supervisors and other officials with the intent "to harm and destroy the reputation, au-

thority, or official standing of those concerned [and for insubordinate attitude and misconduct]." The Court of Claims affirmed the removal. In Ruderer, the plaintiff had accused his fellow employees "of deliberate falsehoods and fraudulent impropriety" in the compiling of maintenance and training data on the equipment under the Command, of "hiding communications" from him about defects and problems within the branch of the Command, of condoning inaccuracies in technical manuals "at the expense of national security" and of actions "tantamount to sabotage." 412 F.2d at 1288. He also accused one of his supervisors of being responsible for the loss of an airplane and the lives of fifteen men in Vietnam. The plaintiff lodged his complaints with his superiors at the command and also with Congressman Hebert of the House Armed Services Committee, and Congressman Curtis from Missouri.

Recognizing the applicability of the Swaaley standard, the Board of Appeals and Review of the Civil Service Commission concluded that the plaintiff "knowingly made irresponsible, false, and malicious statements against employees, supervisors, and officials with intent to harm and destroy the reputation, authority, or official standing of those concerned." [27] The Court further concluded that "plaintiff displayed such reckless disregard of the truth in making his statements that they are outside any First Amendment protection." 412 F.2d at 1290. It should also be noted that in Ruderer the standards of conduct and the penalties for their violation were clearly prescribed by departmental regulation. The pertinent regulation stated that " * * * employees are not permitted to make irresponsible, false, or defamatory statements for the express purpose of injuring others." 412 F.2d at 1290. The table of penalties authorized removal for "[k]nowingly making false or malicious statements against other employees, supervisors or officials with the intent to destroy the reputation,

---

27. Emphasis added by Ct. of Claims.

888

authority or official standing of those concerned."

In Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968), as amended Aug. 23, 1968, 138 U.S.App.D.C. 38, 425 F.2d 469, a police officer and former president of the Canal Zone Police Association was dismissed from his position for circulating a poem defaming the Governor of the Canal Zone. In the course of its opinion, the Court made several pertinent observations concerning the rights of government employees to engage in criticism of their superiors. The Court observed that "[f]ree and open discussion within an agency of government is different from heated debate flowing into the public arena." 392 F.2d at 833. The Court commented that "[l]oyalty to the Government employer cannot be held to compel servility of thought and expression, but it does set a limit on channels and methods available to indicate disagreement with a superior official." 392 F.2d at 834. The Court also noted that while "the Government's interests invested it with broader powers to suppress or inhibit the public speech of its employees, there appears no compelling interest that relieves the Government of its obligation to define narrowly and with as much precision as feasible the speech which it prescribes. There is a particular need for clarity and specificity when Government officials are engaged in regulating speech." 392 F.2d at 834.

In view of the above decisions, it should be clear that reliance on Charge I as apparently construed by the Civil Service Commission as a basis for dismissal of a public employee would definitely restrict the protections afforded by the Pickering, and Sullivan-Swaaley line of cases. In particular, reliance on Specification I(a) raises the important question whether criticism of departmental policy and supervisory conduct intended to encourage the filing of a protected petition under the standards of Sullivan and Swaaley should also receive the protection of the standard stated in these decisions.[27a]

■ Under the Sullivan-Swaaley standard, if a petition charging racial discrimination had been filed either by the plaintiff or by Samuel C. Moore, such expression would be protected unless the charges were made with knowledge of their falsity or reckless disregard of their truth. Under the facts of this case, there appears no reason why, in the absence of specific and carefully drawn regulations, Ruderer v. United States, Meehan v. Macy, supra, describing the manner of filing complaints and the penalties for violation thereof, that one public employee's encouragement of another to exercise a right under Sullivan and Swaaley should dissipate the protection which either employee acting alone would receive. It is of course clear that any encouragement given to file a complaint which itself involved actual malice under the standards of New York Times v. Sullivan would not be protected. Further, there seems to be no question that a charge of using one's position to foment disaffection and discord would provide a basis for removal if it were proved that unjustified charges of racial and religious discrimination were made with the intent to foment such disaffection and thereby disrupt the orderly functioning disaffection and discord would provide a of the government. As construed by the Civil Service Commission the first charge does not meet either of these minimal standards derived from Sullivan and Swaaley.

■ Charge II essentially alleges the improper divulging of confidential

<hr>

27a. In his affidavit submitted in support of the plaintiff's discharge, Lemuel Garrison thought it significant that Mr. Iannarelli allegedly had urged a fellow employee, Samuel C. Moore, to file a complaint charging racial discrimination with "Hon. Adam Clayton Powell and the National Association for the Advancement of Colored People." It is disturbing to find that a responsible management official of a Federal agency would attach any negative significance to an employee's urging a fellow employee to file a petition with a Member of Congress.

information and Charge III, except for Specification (a) relating to Maurice Kowal, contains several allegations that the plaintiff falsely charged that a management official of the Park Service threatened to kill him. A charge of violating the confidentiality of department records is not protected by the standards of *Sullivan* and *Swaaley*. Further, it would be open to the Civil Service Commission to find that the plaintiff's charge of an alleged threat on his life had been made "with knowledge of its falsity or with reckless disregard of its truth." Such a statement also would not be protected under *Sullivan* and *Swaaley*. Both the second and third charges therefore are of a most serious nature. The Court assumes without deciding that these latter charges, if sustained on the record after appropriate review by the Civil Service Commission, would form an appropriate and sufficient basis for the removal of an employee from his civil service position.

In light of these factors the Court has determined that the disposition of the present action should take account of the errors in the Civil Service Commission's evaluation of Charge I, as well as the substantial grounds for removal alleged in Charges II and III. While denying relief to the plaintiff, the Court will order the remand of the present action to the Civil Service Commission to determine (1) whether the record supports Charge I as originally framed by the National Park Service, and (2) whether if Charge I is found unsupported, Charge II and/or III, on the record before it, would provide a sufficient basis for the plaintiff's removal "to promote the efficiency of the service" under 5 U.S.C. § 7501.

This action is necessary because it is not clear from the present record that the Civil Service Commission would have rested its approval of plaintiff's dismissal on Charges II and III alone. Therefore, it is not possible for this Court to conclude that the error in regard to Charge I was harmless. In Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F.2d 822 (1968), the Court of Appeals for the District of Columbia, after finding invalid two of three grounds on which the employing agency and Civil Service Commission relied to remove an employee from his position, ordered the remand of the action to the District Court "pending further consideration" by the employing agency and the Civil Service Commission.

The Court of Appeals ordered this remand and reconsideration because it was "unclear whether the three charges were deemed by the agency and the Civil Service Commission to constitute separate or cumulative grounds for discharge." 392 F.2d at 839. Here, as in Meehan v. Macy, it is not possible to consider the errors concerning Charge I as harmless —since there is no clear indication in the record that Charges II and III "would have resulted in a discharge." 392 F.2d at 839. As stated by the Court in Braniff Airways, Inc. v. C.A.B., 126 U.S.App. D.C. 399, 379 F.2d 453 (1967) " * * * an error cannot be dismissed as 'harmless' without taking into account the limited ability of a court to assume as a judicial function, even for the purpose of affirmance, the distinctive discretion assigned to the agency." 379 F.2d at 465–466.[28]

An Order will be entered in accordance with this Opinion.[29]

28. Gray v. Macy, 358 F.2d 742 (9th Cir., 1966); Bond v. Vance, 117 U.S.App.D.C. 203, 327 F.2d 901 (1964).

29. I wish to express my appreciation to Richard P. Brown, Jr., Esquire, and to other members of his firm, for their vigorous and effective representation of the plaintiff in this action.